## Case No. 15,871.

UNITED STATES ex rel. RANGER v. NEW ORLEANS.

UNITED STATES ex rel. PETERKIN v. SAME.

[2 Woods, 230.] 1

Circuit Court, D. Louisiana. April Term, 1876.2

MANDAMUS — TAX LEVY — STATUTORY LIMITATION OF DEBT—PRINCIPAL OF DEBT.

1. The purpose of the writ of mandamus is to enforce, not to create legal duties.

2. It will not issue to compel officers of municipal corporations to levy and collect a tax unless the legislature has, either expressly or by implication, made it the duty of such officers to levy and collect such tax.

3. The imposition of taxes is the exercise of a legislative, not of a judicial function.

4. A general statute of Louisiana prohibited municipal corporations from incurring any debt or liability unless in the ordinance creating the same full provision was made for the payment of principal and interest; at the same time a special statute prescribed the form of the ordinance by which a particular debt might be created, and declared that such ordinance must be submitted to the legal voters of the corporation, and the assent of a majority of such voters was made a condition of its validity. Held, that where such ordinance, so submitted to the voters for their approval, contained no provision for the levying of any tax to pay the principal of the debt, but did contain another provision, which was evidently deemed ample for such purpose, it was the evident intention of the legislature that the principal debt should not be paid by taxation, and in such case the writ of mandamus to compel the levy of a tax to pay such principal was refused.

5. The acts of the legislature and the ordinance mentioned in the preceding headnote being in force, and the statute having declared that certain stock therein named should be perpetually pledged for the payment of the principal of the debt which the municipal corporation was, by the same statute, authorized to con-

tract, the predecessors of respondents made a sale of said stock for the sum of $350,000, which sum had long since been spent for other purposes, and no part of which was, or ever had been, in the possession or under the control of respondents. *Held*, that relators were not entitled to the writ of mandamus to compel the application of the sum of $350,000 to the payment of the principal of their debt.

These were applications for writs of mandamus, to be addressed to the mayor and administrators of the city of New Orleans, comprising the common council thereof, commanding them to levy and collect a tax sufficient to pay the principal of certain bonds issued by the city in the year 1854. The return made by the respondents showed the following to be the facts: In the year 1854, the general assembly of the state of Louisiana authorized the city of New Orleans to subscribe for stock in certain contemplated railroads centering in said city. To pay for said stock, the city was authorized to issue bonds equal in amount to the stock at its par value (see Acts 1854, Nos. 108–110). Judgments had been obtained in this court for the principal of the sum named in said bonds, and an execution had been issued thereon, which had been returned nulla bona. [See Cases Nos. 11,026 and 11,564.] The return then alleged that there was nö provision in these statutes, or any other statute of this state, for the levying and collection of this tax, and referred to this statute, especially the second section, to show that the legislature did not intend that any tax should be levied to pay the principal of these bonds, but that it intended that the principal should be paid out of the stock and its revenues. To this return the relators demurred, and the question was, whether upon this state of facts the court would grant the writ.

T. J. Semmes, Robert Mott, Thos. Allen Clarke, Thos. L. Bayne, H. B. Kelley, and D. C. Labatt, for relators.

B. F. Jonas, City Atty., John Finney, and H. C. Miller, for respondents.

BILLINGS, District Judge. I think the proposition cannot be questioned that this court is without authority to direct a levy of a tax unless it be in accordance with the provisions of some law which makes it the duty of the city common council to levy the same. In other words, that this court cannot create, but can only enforce a clear legal duty.

Mr. Justice Bradley, in Heine v. Levee Commissioners [Case No. 6,325], whose decision was affirmed by the supreme court, says: "The power of taxation belongs to the legislative branch of the government. The judicial department has no general power over the subject. If the officers who are charged with the duty of levying or collecting taxes refuse to perform their functions, the courts, in a clear case of failure, and at the instance of the party directly interested, can, by the

---

1 [Reported by Hon. William B. Woods, Circuit Judge, and here reprinted by permission.]

2 [Reversed in 98 U. S. 381.]

U. S. v. NEW ORLEANS (Case No. 15,871) [27 Fed. Cas. page 132]

prerogative writ of mandamus. compel them to perform acts which are ministerial, as distinguished from those which are judicial or discretionary. This is all the judicial department can do on the subject. unless the legislature has expressly conferred upon it further powers." The question is. has the duty or power to levy this tax been committed by the legislature to the city administration?

It is urged by the counsel for the relators that prior statutes, namely, those of 1835 and 1836, gave this authority, and that the power to levy and collect a tax may be fairly deduced from the permission to contract the debt. The act of 1835 (section 6) provides: "The said mayor and city council shall have power to raise by tax, in such a manner as to them may seem proper, upon the real and personal estate within said city. such sum or sums of money as may be necessary to supply any deficiency for the lighting, cleaning, paving and watering the streets of the said city; for supporting the city watch, the levee of the river. the prisons, workhouses and other public buildings, and for such other purposes as the police and good government of the said city may require. It seems to me that subscriptions to works of internal improvement are excluded from all the purposes here specified. The act of 1836 (page 31, § 4) continued to the several municipalities into which the territory of the old city was then divided, the powers of the old corporation, and those powers were again continued when the different municipalities with additions were consolidated. But there is here no power given to levy this tax.

This brings me to consider the second and principal point urged by the relators' counsel, viz: ·That the legislature, by authorizing the incurring of the debt, authorized the levy of the tax to pay it. The decisions of the courts of last resort of several states were cited, which it is not necessary for me to consider, because they depend upon the statutes of these states; nor need I, upon this point, refer to more than one decision of the supreme court of the United States. The result of what it has said upon the general subject may be summed up in this: It has held that the collection of judgments of the United States courts may be aided by mandamus whenever there is a refusal or failure on the part of the officers to perform any ministerial act clearly imposed by law; it has treated the repeal of laws in force at the time of the issuance of the bonds, and which carried with them substantial rights, as void; and, generally, has given in behalf of parties obtaining judgments in the courts of the United States, the same aid to which parties similarly situated would have been entitled in the courts of the state in which the cause of action arose; but it has never assented to the unqualified proposition that legislative permission to issue bonds carried with it the authority to tax.

The principle upon which alone such a deduction is maintainable is. with its appropriate restrictions, clearly stated by Mr. Justice Miller in the case of Loan Association v. Topeka, 20 Wall. [87 U. S.] 655. The question was as to the validity of certain interest coupons upon which an ordinary suit had been brought. The defense was that taxation could only be invoked for purposes distinctively public, and that permission to issue the coupons carried with it the right to a tax to pay them, and that as the purpose for which these coupons were issued was not a public one, the statute authorizing them and the obligations themselves, were void. He had said that ordinarily the debt of municipal corporations had to be paid by means of taxation. He adds (page 660): "It is therefore to be inferred that, when the legislature of a state authorizes a county or city to contract a debt by bond, it intends to authorize it to levy such taxes as are necessary to pay the debt, unless there is in the act itself, or in some general statute. a limitation upon the power of taxation which repels such an inference."

I think it to be indisputable that the absence of any permission by the legislature for a tax, and the substitution of some other means of payment which was deemed fully adequate, would as completely repel the inference that a resort to taxation was intended, as would a restriction upon the power of taxation itself.

Now, it is urged by the counsel for the city. that the statute by which these bonds. were authorized shows that the legislature intended that the principal should be paid by means other than taxation. An examination of this statute has convinced me that the belief of the legislature was that the principal sum could, and its intent was that the principal sum should, be paid out of the stock and its revenues. The act pledges in perpetuity the stock for that purpose; it gives the right to the bondholder to convert his bond into stock; it provides that all dividends derived from the stock above six per cent. should be devoted to extinguish the principal; and while providing with extreme rigor for the payment of the interest, in case dividends from the stock should not be altogether sufficient, and, while providing that until the ordinance levying this yearly tax to pay the interest had been passed by the common council, no valid resolution could be adopted, it is profoundly silent as to any tax to pay the principal. The implication is that the legislature intended the bondholders should, for the collection of the principal sum, look to the stock, at least to the exclusion of taxation.

But, among the statutes of the state, with reference to the city of New Orleans, and among the general statutes of the state, are found acts that give the absence of any particular means of payment in a city ordinance creating a debt a special significance. The ·

act of 1852, No. 51, entitled "An act to consolidate the city of New Orleans and provide for the government," etc. (section 37, p. 54), contains the following provision: "And no ordinance (of the city of New Orleans) creating a debt or loan, shall be valid, unless for some single object, or work distinctly specified therein, and unless such ordinance shall provide ways and means for the punctual payment of running interest during the whole time for which said debt or loan shall be contracted, and for the full and punctual discharge at. maturity of the capital borrowed or the debt incurred."

The act of 1853 (No. 258, p. 234) provides "that the police juries of the several parishes of this state, and the constituted authorities of incorporated towns and cities in this state, shall not hereafter have power to contract any debt or pecuniary liability without fully providing, in the ordinance creating the debt, the means of paying the principal and interest of the debt so contracted."

A subsequent section provides that "whenever police juries or authorities of incorporated towns or cities shall have provided for the payment of a debt by levying a tax, and shall fail or refuse to cause said tax to be collected, the court rendering judgment may issue its mandate," etc.

Now, since the general statute, and the statute with reference to the city of New Orleans, struck, with nullity, all obligations of cities, unless the ordinance creating the same, fully provided for the payment; and since one of the same statutes makes special enactments with reference to cases where "the provision for payment shall be by levying a tax," thereby showing that taxation was included in the term "means," it seems to me, that, when a contemporaneous legislature authorized a city to issue bonds and prescribed the form of the ordinance which the city common council should adopt, creating the obligation, the failure of such ordinance, to prescribe any provision for taxation, and the insertion in such ordinance of other means of payment which appear to have been deemed abundantly adequate, of itself, repels the inference that taxation was intended.

The legislature knew that the ordinance was void unless it contained full provision for payment. It meant, therefore, to set forth all the "means" which were to be considered as provided, and any addition of means by way of inference is excluded.

It follows, therefore, that since the legislature of the state of Louisiana has not by any general or special statute expressly or by implication made it the duty of the common council to levy this tax, this court is without any authority to direct its imposition.

It remains for me to consider the special circumstances in the case of Morris Ranger. The petition alleges, and the return admits, the sale of this stock by the predecessors of the present common council, provided they had the power to sell the same, and that they received therefor the sum of $320,000. The return then states that "no part of said proceeds of said so called sale is now in the treasury of the city, or in the possession, or under the control of these respondents; that the said proceeds have long since been used and expended, and no portion thereof ever came into the possession or under the control of these respondents, the present authorities of said city. These respondents show that no writ of mandamus can issue to compel the payment of the relator's demand out of said proceeds, because said proceeds are not in existence." Courts cannot issue a writ commanding the performance of an admitted impossibility.

If there are no funds arising from this sale in the treasury of this city, now under control of respondents, and they were spent years since by respondents' predecessors, then it would be idle to issue a mandate to the respondents to pay the relator out of them. Whatever may be the remedy of the relator by reason of the special facts of this transaction, it is clear that he is not entitled to a mandamus.

Let the demurrers be overruled, and the writs of mandamus refused.

[Writs of error were sued out by the relators in the supreme court, when the judgments of this court were reversed, and the causes remanded, with direction to issue the writs of mandamus as prayed. 98 U. S. 381.]